# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | |
| John W. Fliss, | ) | Case No. 15 B 29567 |
| | ) | |
| Debtor. | ) | Judge Jacqueline P. Cox |

## Opinion Sustaining Claim Objection

### I. Jurisdiction

Federal district courts have original and exclusive jurisdiction of all cases under title 11, the Bankruptcy Code (the "Code"). 28 U.S.C. § 1334(a). The federal district courts also have original but not exclusive jurisdiction of all civil proceedings arising under, arising in or related to bankruptcy cases. District courts are allowed to refer their bankruptcy cases to the bankruptcy judges for their districts. The District Court for the Northern District of Illinois has referred its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. Internal Operating Procedure 15(a).

Bankruptcy judges may hear and determine all cases under the Code and all core proceedings arising under the Code, or arising in or related to a case under the Code, once referred, and may enter appropriate orders and judgments, subject to review under section 158 of the Judicial Code. 28 U.S.C. § 157(b)(1) This matter is a core proceeding under 28 U.S.C. § 157(b)(2)(B) - an action to determine the allowance or disallowance of claims against the bankruptcy estate.

### II. Background

On July 24, 2016, the Debtor filed an Objection to the Claim of creditor Generation

Capital I, LLC ("Generation Capital I"). Docket 61.

In response to a motion to disallow the claim as a sanction because the creditor did not

make adequate court-ordered disclosures, Docket 88, the court, on January 5, 2017, disallowed

Generation Capital I's claim. Docket 97.

The District Court vacated the January 5, 2017 disallowance order because it was entered

without a finding that the creditor had acted wilfully in failing to produce information. The

District Court also vacated a January 9, 2017 order that confirmed the Debtor's plan. The claim

objection and the motion to disallow are before the court for ruling.

After the District Court remand, an evidentiary hearing was held on Thursday, October

31, 2019. A motion for sanctions, filed post-appeal on July 19, 2018, was withdrawn on May 31,

2019. Dockets 150, 223.

### III. Facts

On April 22, 2009, borrowers Duraguard Services, LLC ("Duraguard") and Polymeric

Solutions, LLC ("Polymeric") executed a promissory note in favor of lender Barrington Bank and

Trust Company, N.A. ("Barrington") to obtain a loan in the principal amount of $200,000.

Debtor John Fliss, Mark E. Barr, Lawrence E. Wojciak ("Wojciak") and The Sherry R.

Wojciak Revocable Trust dated February 16, 1999 ("the Trust") personally guaranteed the note.

Each guarantor executed a commercial guaranty ("Commercial Guaranty") dated on or about

April 22, 2009. Joint Stipulated Facts ("Joint Stip."), Docket 222, ¶ 2; Claimant Ex. 3.

Duraguard and Polymeric executed business loan and commercial security agreements. Joint

Stip. ¶ 3; Claimant Ex. 4.

Change in term agreements were executed by Duraguard and Polymeric on April 22,

2010 and June 22, 2010.  Joint Stip. ¶ 4.

The parties defaulted on the loan.  On May 16, 2011, Barrington filed a Verified

Complaint and Confession of Judgment ("Barrington Complaint") in the Circuit Court of Cook

County, Illinois (the "State Court Litigation").  The Barrington Complaint asserted claims against

the Debtor and the other defendants, including Lawrence E. Wojciak.  Joint Stip. ¶ 5.

On May 23, 2011, a week after the case was filed, the Circuit Court entered a judgment in

favor of Barrington in the amount of $208,639.95 (including costs and attorney's fees) and

against the Debtor and co-defendants Mark E. Barr, Lawrence E. Wojciak and the Trust, jointly

and severally.  Joint Stip. ¶ 6.

On February 24, 2012, Barrington and Generation Capital I entered into a Note Sale and

Assignment Agreement ("Note Agreement"), pursuant to which all of Barrington's right, title and

interest to the State Court Litigation and the loan documents that Barrington and the Debtor were

party to, including the State Court Judgment, were assigned, sold and transferred to Generation

Capital I.  Joint Stip. ¶ 7.  The Note Agreement provides that in exchange for a $240,000

payment to Barrington, in the form of a cashiers check or wire transfer, Barrington would assign

to Generation Capital I all of its rights in the loan documents and the State Court Judgment.

Joint Stip. ¶ 8.

Two days later, on or about February 26, 2012, a settlement agreement was entered into

by and between Barrington, Lawrence Wojciak and the Trust settling the state court judgment.

Joint Stip. ¶ 9.  Paragraph 2 of that agreement provides that in consideration of the $240,000

payment by Wojciak and/or the Trust to Barrington the state court judgment would be settled.

Joint Stip. ¶ 10.  Pursuant to ¶¶ 5 and 6 of the agreement Wojciak and the Trust released

Barrington from any claims and pursuant to ¶ 7, Barrington released Wojciak and the Trust from

any claims. Joint Stip. ¶ 11. Paragraph 3 provided that upon receipt of the settlement amount

Barrington would assign the loan documents to Generation Capital, LLC (not Generation Capital

I, the plaintiff in the state court case). Joint Stip. ¶ 12.

The wire transfer to Barrington of the $240,000 settlement amount pursuant to the

settlement agreement was authorized by Sherry Wojciak from an account owned by Generation

Capital II, LLC and for the beneficiaries Duraguard and Polymeric. Joint Stip. ¶ 13.

In contrast, however, in the complaint he filed seeking contribution, Lawrence Wojciak

stated that he "Plaintiff has paid more than his respective and just proportion of the joint

indebtedness to the Bank." Fliss Exhibit 4, Second Amended Verified Complaint, 11 CH 10253,

¶ 22. This court finds that he was correct when he said that he paid the $240,000, not Generation

Capital I. He used the LLCs as masks to assume a different identity to pursue the Debtor for the

entire debt, not just a contribution share.

The claimant argued at some point that the statements made by Lawrence Wojciak in the

11 CH 10253 pleading are not relevant or admissible. This court disagrees and does not recall

being asked to enter a protective order prohibiting the consideration of such herein. What he

says about the transactions in issue is relevant and reliable.

The state court ruled in 2015, however, that the settlement agreement was never satisfied,

that the matter was resolved pursuant to the Note Agreement wherein Generation Capital I

became the plaintiff in the state court litigation:

> It follows that, as of February 27, 2012, when Barrington received $240,000 from
> Plaintiff, Plaintiff stepped into Barrington's shoes and has a live cause of action
> against John W. Fliss, Mark E. Barr, Lawrence E. Wojciak and The Sherry R.

Wojciak Revocable Trust Dated 2/16/99 for an outstanding judgment in the
amount of $204,797.70.

Claimant's Exhibit 13, March 12, 2015 Order, p. 4.

Sherry Wojciak executed a letter of authorization dated February 24, 2012 to start the
wire transfer of the settlement amount to Barrington from an account at Schwab in the name of
Generation Capital II. Joint Stip. ¶ 14. Generation Capital I borrowed the funds from Generation
Capital II; Generation Capital I signed a note in favor of Generation Capital II for the funds paid
to Barrington. Joint Stip. ¶ 26.

A court order was entered in the state court litigation pursuant to which Generation
Capital I was substituted in Barrington's place as the plaintiff. Joint Stip. Facts ¶ 15.

On October 24, 2012, Lawrence Wojciak filed a Second Amended Verified Complaint
against the Debtor and others seeking equitable contribution. Joint Stip. ¶ 16. Lawrence sued
Mark Barr, John Fliss, Duraguard, Polymeric and Autohouse Garage in that action. He did not
sue co-obligor The Sherry R. Wojciak Trust. Fliss Exhibit 4. This failure to sue highlights this
court's finding that the merger doctrine applies to extinguish the debt.

In 2011, an operating agreement was prepared for Generation Capital I whose members
and percentage interests consisted of Larry Wojciak, Trustee of the Lawrence E. Wojciak
Restatement of Trust (98%), Sherry R. Wojciak, Trustee of the Sherry R. Wojciak Restatement
of Trust (1%) and Matthew Wojciak (1%). Joint Stip. ¶ 17.

In 2011, an operating agreement was prepared for Generation Capital II whose members
and percentage interests consisted of Sherry R. Wojciak, Trustee of the Sherry R. Wojciak
Restatement of Trust (98%) and Matthew Wojciak (2%). Joint Stip. ¶ 18.

Generation Capital I was formed as a limited liability company and registered in Delaware on March 30, 2011. Joint Stip. ¶ 19. Generation Capital II was formed as a limited liability company and registered in Delaware on March 30, 2011. Joint Stip. ¶ 20.

On March 1, 2011, Sherry R. Wojciak executed a Restatement of The Sherry R. Wojciak Trust. Sherry stipulates that she signed the document creating the original Trust in 1999. Sherry also stipulates that she signed the Restatement notwithstanding that the signature page bears the signature of Lawrence Wojciak and refers to the Lawrence Wojciak Restatement of Trust. Joint Stip. ¶ 21. That her husband signed this document when she should have supports this court's conclusion that the Generation Capital I and Generation Capital II entities, and the trusts, along with Lawrence Wojciak and Sherry R. Wojciak, do not operate independently of one another and are generally interchangeable in a way that supports this court's findings that the merger doctrine has extinguished the debt in issue.

According to Sherry R. Wojciak's December 30, 2016 affidavit, the Sherry R. Wojciak Restatement of Trust and Generation Capital II were set up for estate planning purposes and that neither that Trust nor Generation Capital II filed tax returns as the profit and/or loss flow through to her personal income tax return. Generation Capital II's only asset is a Charles Schwab account; however, we also know that Generation Capital II holds Generation Capital I's note. Fliss Exhibit 10. This shows that the Trust and Generation Capital II are the alter egos of Sherry R. Wojciak for purposes of the merger doctrine. Recall that Sherry Wojciak authorized the $240,000 transfer from Generation Capital II's account to Barrington to consummate the Settlement Agreement, although the state court found that the Settlement Agreement was not satisfied. The Wojciaks' roles are blending; they are each other's alter egos.

-6-

Generation Capital II paid Barrington Bank $240,000 in exchange for the purchase by Generation Capital I of the Barrington Bank loan documents and the state court judgment.

The only assets owned by Generation Capital I are the state court judgment and the Barrington loan documents. Joint Stip. ¶ 29. Generation Capital I has no bank accounts and has not generated any income since 2011. Joint Stip. ¶ 30. Generation Capital I has not sued Lawrence Wojciak or The Sherry R. Wojciak Trust, its co-obligors, for contribution as allowed by Illinois law. *UIRC-GSA Holdings Inc. v. Wm. Blair & Co.*, 2017 WL 3700792, *6 (N.D. Ill. August 25, 2017) ("In an action for common law contribution, the right to contribution arises due to the compulsory payment by a joint obligor of more than his share of a common obligation."); *Wellness Int'l v. Chase (In re Sharif)*, 407 B.R. 316, 321 (Bankr. N.D. Ill. 2009) ( Co-obligors reminded that they had contribution and indemnification rights ). Essentially, Lawrence Wojciak will not sue himself, the real party interest. The state court plaintiff, Generation Capital I, is a proxy for its 98% member, Lawrence Wojciak, as Trustee of the Lawrence E. Wojciak Trust, who uses it for his strategic advantage. The entity does not function separately from Lawrence; it stands in his place and has been used to maximize his recovery from the Debtor, his co-obligor. Recognizing him and Generation Capital I as a separate individual and a separate entity would elevate form over substance.

On February 27, 2012, $240,000 was wired to Barrington from account xxxx4592, owned by Generation Capital II, held at Charles Schwab. Joint Stip. ¶ 32.

The accounts owned by the Trust at Charles Schwab, accounts xxxx2214 and xxxx3551, were closed on or about April 30, 2011 and September 30, 2011; the monies were transferred to accounts owned by Generation Capital II at Charles Schwab, accounts xxxx7110 and xxxx4592.

Joint Stip. ¶ 33.

Transfers from account xxx2214 owned by the Trust were made to Lawrence Wojciak's

Chase bank account between April 1, 2009 and April 11, 2011 in the amount of $730,000. Joint

Stip. ¶ 34. Trust assets were made available to Lawrence in his individual capacity.

Transfers from account xxxx3551 owned by the Trust were made to account xxxx2214

between April 1, 2009 and April 11, 2011, totaling $160,000. Joint Stip. ¶ 35. In April, 2011,

account xxxx2214 was closed and all investments were transferred to account xxxx7110 owned

by Generation Capital II totaling $1,432,452.65. Joint Stip. ¶ 36.

On April 21, 2011, $112,167.98 was transferred from account xxxx3551 owned by the

Trust to account xxxx4592 owned by Generation Capital II. Joint Stip. ¶ 37.

In April, 2011, account xxxx3551 owned by the Trust was closed and investments

exceeding $1,330,000 were transferred to account xxxx4592 owned by Generation Capital II.

Joint Stip. ¶ 38. Between April 18, 2011 and December 31, 2016, transfers were made from

account7110 owned by Generation Capital II to account xxxx4592 owned by Generation Capital

II in the amount of $1,048,533. Joint Stip. ¶ 39.

Between April 21, 2011 and December 31, 2016, transfers were made from account

xxxx4592 to Sherry Wojciak's Bank of America account totaling $1,883,400. Joint Stip. ¶ 40.

Generation Capital I did not pay any of the legal fees or reimbursement of expenses to

counsel for Generation Capital I as disclosed in the attachment to Generation Capital I's proof of

claim. Joint Stip. ¶ 41. All legal fees referenced in the attachment to the proof of claim were

invoiced to Lawrence Wojciak, individually, and if called to testify, Lawrence Wojciak would

testify that he paid the fees and costs on behalf of Generation Capital I and intends to seek

-8-

reimbursement from Generation Capital I. Joint Stip. ¶ 42. This shows that Lawrence Wojciak

and Generation Capital I act on each other's behalf. The court finds that Lawrence Wojciak

used Generation Capital I as his alter ego in having the loan documents and rights transferred to

it.

## IV. Legal Issues

Generation Capital I argues that the Debtor can not now argue that he is not indebted to

Generation Capital I, the new plaintiff in the state court litigation because the state court denied

the Debtor's motion for determination, ruling that Generation Capital I was a separate entity that

did not owe the Debtor contribution for the payment made to Barrington.

The state court ruled that Lawrence Wojciak, the Debtor's co-defendant in the state court

litigation, did not settle Barrington's debt pursuant to the Settlement Agreement which could

have entitled Lawrence Wojciak to contribution: "Therefore, the Settlement Agreement's terms

have never been satisfied." Opinion and Order, dated March 12, 2015, Claimant Exhibit 13, p. 3.

Instead of satisfying the February 26, 2012 settlement agreement in his individual capacity,

pursuant to which the Debtor would have owed him a proportionate share of the $240,000,

Lawrence Wojciak now seeks $359,967.69 through Generation Capital I, an entity the Lawrence

E. Wojciak Trust owns 98% of. Recall that Generation Capital I owns only the loan assets and

that it has no accounts. Note also that it has not generated any income since 2011. Joint Stip.

¶¶ 29-30. Apparently it does not need an account to act as Lawrence Wojciak's alter ego. Its

business is Lawrence Wojciak's business.

### A. Burden of Proof in Claim Objection Matters

Claims filed in bankruptcy cases are presumed valid under 11 U.S.C. § 502(a) if filed and

executed in accordance with the Federal Rules of Bankruptcy Procedure: A proof of claim

"constitutes prima facie evidence of the validity and amount of the claim." Federal Rule of

Bankruptcy Procedure 3001(f). Claim objectors carry the initial burden to produce some

evidence to overcome this rebuttable presumption. The objecting party's evidence must be of a

probative force equal to that of the allegations asserted in the claim and once that has been done,

calling into question whether the claim is allowable, the burden shifts back to the claimant to

produce evidence to meet the objection and establish that the claim is allowable. The ultimate

burden of persuasion remains with the claimant to prove entitlement. *In re Kreisler*, 407 B.R.

321, 324-25 (Bankr. N.D. Ill. 2009).

## B. Res Judicata Bar

Res judicata bars the re-litigation of identical claims when the same parties are involved

in a later case after a final judgment has been entered in the earlier matter. *Montana v. U.S.*, 440

U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("Under res judicata, a final judgment on the

merits bars further claims by parties or their privies based on the same cause of action.").

However, strict application of res judicata in bankruptcy is not always warranted.

> The application of res judicata to dischargeability actions is improper as such
> claims can arise only in the context of a bankruptcy proceeding. They involve
> determining, for example, whether a debt was incurred by fraud (section
> 523(a)(2)), by defalcation by a fiduciary (section 523(a)(4)), whether the debt was
> listed or scheduled (section 523(a)(3)), or whether the debt is a domestic support
> obligation (section 523(a)(5)). Because the issues in dischargeability actions
> extend beyond liability, claim preclusion under res judicata does not apply.

*Cora v. Jahrling (In re Jahrling)*, 514 B.R. 565, 570 (Bankr. N.D. Ill. 2014), *aff'd*, 530 B.R. 679

(N.D. Ill. 2015), *aff'd*, 816 F.3d 921 (7th Cir. 2016). This bar covers issues that were raised as

well as issues that could have been raised.

For the same reason strict application of res judicata to claim objections is improper. Under 11 U.S.C. § 502 a proof of claim is deemed allowed unless a party in interest objects. If an objection is made, the court, after notice and a hearing, has to determine the amount of the claim, except to the extent, for example, that such claim is unenforceable against the debtor and property of the debtor under any agreement or applicable law for a reason other than because such claim is contingent or unmature. Section 502(b). Illinois law on the merger doctrine is applicable law that supports sustaining the Debtor's claim objection. As in dischargeability proceedings, more than liability is in issue in this claim objection matter.

The state court judgment may qualify for a res judicata bar as to the matters resolved therein, the existence of the debt and its amount. *Matter of Bulic*, 997 F.2d 299, 305 (7th Cir. 1993) ("The bankruptcy court could not re-examine either the existence or the amount of the debt unless the debtor could attack the judgment as being obtained by extrinsic fraud."). In addition, federal courts are required by 28 U.S.C. § 1738 to give state-court judgments the same preclusive effect as would be given that judgment under the law of the state in which the judgment was rendered. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). This court recognizes the state court judgment as establishing that the debt was owed by the Debtor and its amount. However, because the judgment was obtained by confession, it was not actually litigated, its preclusive effect will be limited.

### C. Collateral Estoppel - Issue Preclusion

Collateral estoppel prevents the relitigation of any legal or factual issue that has been "actually litigated and determined by a valid and final judgment." *Grip-Pak, Inc. v. Illinois Tool Works, Inc.*, 694 F.2d 466, 469 (7th Cir. 1982).

-11-

Issue preclusion has a different aim than res judicata/claim preclusion. "Instead of promoting finality, the doctrine of issue preclusion holds that 'if an issue happens to have been litigated and determined in a previous suit between the parties, there is no reason to litigate it again.'" *Coady v. Diaz (In re Diaz)*, 580 B.R. 238, 242 (N.D. Ill. 2017). Issue preclusion lies in a subsequent proceeding where: (1) the issues addressed are identical, (2) the issue was actually litigated in the prior proceeding, (3) determination of the issue was essential to the prior judgment and the party against whom issue preclusion is being invoked was fully represented in the prior action. *Id.* The state court judgment against the Debtor was entered under a confession of judgment scenario, nothing was litigated until a later enforcement action was pursued. The 2015 judgment in the citation proceeding is separate. However, neither the record herein nor the Opinion and Order from the state court establish that the March 12, 2015 judgment order followed a contested hearing. What, if anything, has actually been litigated?

The parties asked this court to resolve this matter on the papers and stipulations. This court opted for a contested hearing which was held on October 31, 2019. Did the state court have the advantage of actually hearing the evidence?

The state court judgment does not address the merger issue. It would promote form over substance to allow Lawrence Wojciak (or the Lawrence E. Wojciak Trust of which he is trustee) to use separate entities formed in 2011 to reorder the Debtor's obligations. The confirmation order entered on January 9, 2017 shows that the Debtor wants to pay his unsecured creditors 100% for a total of $205,826. Docket 18, pp. 2, 4. He provided for the claimant as a secured claim treated as unsecured in Section E ¶ 3.2: "The following claims are secured by collateral that either has no value or that is fully encumbered by liens with higher priority. No payment will

-12-

be made on these claims on account of their secured status, but to the extent that the claims are

allowed, they will be paid as unsecured claims, . . . (a) Creditor: Generation Capital I, LLC -

Collateral: memorandum of judgment against real property[1]." *Id.* at 3.

Allowing payment of the Generation Capital I claim for $359,967 as stated in the proof

of claim, could prejudice other creditors.  This court finds that it is not barred from looking

behind the debt by collateral estoppel, issue preclusion, because the relevant merger doctrine

issues of who are the real plaintiff and defendants have not been litigated.

### D.  Alter Ego Analysis

In *In re Collazo*, the Seventh Circuit noted that under Illinois law

> the debts, obligations, and liabilities of a limited liability company . . . are solely
> the debts, obligations, and liabilities of the company; a member of the LLC is not
> personally liable for a debt, obligation, or liability of the company solely by reason
> of being a or acting as a member or manager.  The word 'solely' suggests a
> possible escape hatch . . . but they have failed to present any veil-piercing theory
> that would make Collazo liable under the promissory notes . . .  They could have
> sued the LLCs, which were the signatories of the promissory notes, for breach of
> contract, but probably the LLCs were judgment proof, because Collazo had
> transferred their assets. *Siragusa v. Collazo (In re Collazo),* 817 F.3d 1047, 1052
> (7th Cir. 2016).

Debtor John Fliss argues that Generation Capital I, the substituted plaintiff in the state

court case, is the alter ego of The Sherry R. Wojciak Trust.

In *Wellness Int'l v. Sharif (In re Sharif),* 727 F.3d 751, 773-74 (7th Cir. 2013), *aff'd in*

*part, rev. in part, and remanded,* 135 S.Ct. 1932 (2015) the Seventh Circuit noted that under

Illinois law the alter ego theory of liability most commonly, if not exclusively, arises in the

context of piercing the corporate veil, in which creditors attempt to disregard the corporate form

---

1. Generation Capital I filed an objection to the Debtor's Plan on November 1, 2015.  Docket 31.  Because its claim
will be disallowed the plan objection is moot.

to reach the personal assets of the shareholders, citing *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-73 (7th Cir. 1985) and *Main Bank v. Baker,* 86 Ill. 2d 188, 56 Ill. Dec. 14, 427 N.E. 2d 94, 101-01 (1981).

In *Van Dorn* a vendor brought an action for breach of contract against two corporations dominated by the same individual; it sought recovery for labels and cans ordered by one of the two corporations.  The District Court entered judgment against both corporations.  The Seventh Circuit held that under Illinois law, evidence, including facts that, of two corporations dominated by the same person, corporation which ordered cans and labels from vendor had no assets, while corporation that used cans and labels had substantial assets, that individual operated both corporations very loosely as suited his convenience, and that the corporations were intermingled, warranted piercing the corporate veil to extent of disregarding separate corporate identities and treating them as a single corporate entity responsible for the obligations to vendor.

This court finds that Lawrence E. Wojciak used the Note Sale arrangement, rather than the Settlement Agreement, to resolve Barrington's claims as he operated Generation Capital I and Generation Capital II as suited his convenience, warranting disregard of the separate existence of Generation Capital I.  The transfers of funds between the Wojciaks, the LLCs and the Trust to fund personal expenses buttresses this finding:

Q.  And the–as part of the invest – well, let me just ask you a more general question.

When Generation Capital II LLC, made money, you, Mr. Wojciak, and the Wojciak family made money; is that correct?

A.  That is accurate.

Q. Would it be also fair to say that when Generation Capital II made money, you

took some of that money out to pay bills or vacation or whatever the case may be; is that correct?

A. That is accurate, or purchase other businesses.

Q. And in terms of bills and things like that, is that how it worked, Generation

Capital II would transfer some of that money to personal accounts so checks could be written?

A. That is accurate

Transcript of October 31, 2019 Trial, p. 52.

In *Main Bank* the Illinois Supreme Court noted that

> Generally, before the separate corporate identity of one corporation will be
> disregarded and treated as the alter ego of another, it must be shown that it is so
> controlled and its affairs so conducted that it is a mere instrumentality of another,
> and it must further appear that observance of the fiction of separate existence
> would, under the circumstances, sanction a fraud or promote injustice. *Main Bank
> v. Baker,* 86 Ill.2d 188, 205 (1981).

### E. Merger

There exists many issues beyond the existence of the debt and its amount that are relevant

in resolving claim objections.   The state court rejected the Debtor's defense that Lawrence

Wojciak was the plaintiff in the underlying lawsuit, which could have given Lawrence Wojciak a

right of contribution, however, the doctrine of merger was not considered.

Under the merger doctrine a plaintiff who holds the instrument/debt he sues on and has

become both the creditor and debtor such that his or her interests have merged, thereby

extinguishes his debt.   "The merger doctrine provides that when one person, who is bound to pay

an obligation, also becomes entitled to receive that same obligation, there is an extinguishment of

rights." *Access Realty Group, Inc. v. Kane,* 2019 IL App. (1st) 180173, 2019 WL 4392181, * 3,

-15-

September 13, 2019.  The principle is "that a party may not sue himself at law or in equity."
*Matter of Estate of Ozier*, 225 Ill. App. 3d 33, 36 (1992).

Recall that Lawrence Wojciak was one of the guarantors of the 2009 Barrington loan and a defendant in the underlying lawsuit.  The state court plaintiff Generation Capital I, of which he is the trustee of the trust which is a 98% owner, was formed in 2011.  The $240,000 payment to Barrington was authorized by his wife from the account of Generation Capital II after the litigation was initiated.  Joint Stip. ¶ 14.[2]

As a defendant in the underlying case who upon satisfying the Barrington debt would be entitled to contribution from the Debtor for his share of the debt (as alleged in the separate, but later dismissed, lawsuit filed by Lawrence Wojciak), not the full amount which he seeks by arranging to have Generation Capital I be the plaintiff.  Lawrence Wojciak, the Debtor's co-obligor on the Barrington debt, along with his wife who authorized the transfer of $240,000 to Barrington, has formed and funded Generation Capital I to be the state court plaintiff who has no separate function, business or accounts.  By arranging to have Generation Capital I obtain the right to enforce the debt with funds his wife authorized, he rearranged the parties' roles to become both a plaintiff and a defendant in the state court matter.  He is a Plaintiff because a recovery by Generation Capital I would enure to his benefit since the Lawrence Wojciak Restatement of Trust is a 98% member of Generation Capital I.  Lawrence Wojciak is a defendant and co-obligor as shown by the caption of the March 12, 2015 Opinion and Order:

---

2. Sherry R. Wojciak testified at her October 9, 2018 deposition that she signs documents her husband tells her to sign and that she did not recognize the document authorizing the February 24, 2012 transfer of funds, although the Joint Stipulated Facts ¶¶ 13-14 say that she executed a letter of authorization dated February 24, 2012 to initiate the wire transfer of the Settlement Amount to Barrington from an account at Schwab in the name of Generation Capital II.

Generaton Capital I:  Plaintiff v. Duraguard Services, LLC; Polymeric Solutions, LLC; John W.

Fliss; Mark E. Barr, Lawrence E. Wojciak, and The Sherry R. Wojciak Revocable Trust Date

2/16/99, Defendants.  Claimant Exhibit 13.  This court looks behind the formalities and observes

that plaintiff Generation Capital I is a surrogate for one of the original co-obligors, Lawrence

Wojciak.  This alignment where Lawrence Wojciak is both a plaintiff, through Generation

Capital I, when he was still a defendant and co-obligor in the 2015 Opinion and Order, amounts

to a merger, extinguishing the debt.

　　　Application of the merger doctrine is fact specific.  The resulting extinguishment of the

Barrington debt is compelling in light of the events of February 24 and 26, 2012.  On February

24, 2012, Lawrence Wojciak executed a  Note Sale agreement as Generation Capital I's

Manager; the loan rights were to be transferred to Generation Capital I.  Claimant Exhibit 8;

Joint Stip. ¶ 7.  Two days later on February 26, 2012, the Settlement Agreement was executed by

which Lawrence and/or the Trust was to pay Barrington $240,000; Barrington was to release

Lawrence Wojciak, a co-obligor, and the Trust.  Joint Stip. ¶ 11.  He signed the Settlement

Agreement in his individual capacity.  Fliss Exhibit 2.  The facts do not show that Lawrence and

the Trust function as separate entities.  Note that Generation Capital I and Generation Capital II

do not have business operations.  Generation Capital I has not generated any income since 2011.

Joint Stip. ¶ 30.  Generation Capital II's profits are reflected on another's tax return.  Sherry R.

Wojciak December 30, 2016 Affidavit, Fliss Exhibit 10, ¶ 4.  Their assertion that those entities

were formed for estate purposes rings hollow.  Lawrence Wojciak's testimony in this regard is

worthy of no weight.  It is not to be believed considering that the Note Sale and the Settlement

Agreement were executed by Lawrence within a two-day period of time.  He was evaluating his

options. He followed through on the option that he believed allowed him to recoup the entire

$240,000, now $359,967.69, from the Debtor (through Generation Capital I), not just an

equitable amount of contribution, as alleged in his separate lawsuit, 11 CH 10253. Second

Amended Verified Complaint. Fliss Exihbit 4, ¶ 30: "Fliss is liable to contribute to Plaintiff

(Lawrence Wojciak) the amount that would have been Fliss' proportionate share of the

indebtedness owed under the terms of the Bank Loan." This is a judicial admission. *McCaskill*

*v. SCI Mgmt. Corp.,* 298 F.3d 677, 680 (7th Cir. 2002). To observe corporate formalities herein

would elevate form over substance. Note that as the plaintiff therein Lawrence Wojciak did not

seek contribution from himself or his co-obligor The Sherry R. Wojciak Trust. He did not

outright sue himself or The Sherry R. Wojciak Trust, who are co-obligors, but now seeks

$359,967.69 from the Debtor in the name of his alter ego in an attempt to maximize his recovery.

    The Debtor points out that the release by Barrington in exchange for payment releases all

joint obligors. *In re Doctors Hosp. Of Hyde Park, Inc,* 484 B.R. 344, 368-69 (Bankr. N.D. Ill.

2013) ("Under the Illinois common law rule, LaSalle's release of its claims against Nomura/ASC

resulted in the release of LaSalle's claim here against Doctors Hospital because Doctors Hospital

is a co-obligor with Nomura/ASC."). Lawrence Wojciak may have decided not to proceed on the

settlement agreement because it would  have released his co-obligors, including the Debtor,

leaving Lawrence Wojciak with a claim for a contribution share from the Debtor.

    Most compelling regarding the merger doctrine is that the state court's March 12, 2015

Opinion concludes by stating that Lawrence Wojciak was still a defendant: "There remains an

outstanding judgment against John W. Fliss, Mark E. Barr, Lawrence E. Wojciak and The Sherry

R. Wojciak Revocable Trust Dated 2/16/99 in the amount of $204,797.70." Claimant Exhibit 13,

p. 4.

Knowing that Lawrence E. Wojciak was also the 98% owner (as trustee of the Lawrence

E. Wojciak Restatement of Trust) of the plaintiff Generation Capital I says a lot: Lawrence

Wojciak is suing himself - the caption states that  Generation Capital I has a claim against

Lawrence Wojciak in his individual capacity.

Lawrence Wojciak did not file a proof of claim in his individual capacity for equitable

contribution.  The Plan filed at Docket 18 provides for the claim in issue; it is to be paid 100%

(see Confirmation Order at Docket 100) which may be more than what the Debtor owes as a

contribution share.  Lawrence Wojciak and the Trust, within a span of two days, weighed their

options:  Purchase Barrington's rights as the Generation Capital I entity or pursue the settlement

agreement and obtain releases for two guarantors, Lawrence and the Trust, who could seek

contribution, not the entire amount paid,

Claimant Generation Capital I argues that it is a separate entity.  As the Appellate Court

noted in *Access*, 2019 IL App., at *3, "a court may disregard a corporate entity where the

corporation is merely the alter ego or business conduit of another person."  Here, as in *Access*,

this court is not piercing a corporate veil to hold someone or another entity liable for a corporate

debt.  Like the Appellate Court, this court finds that some of the principles of veil-piercing apply

to the analysis of whether two parties share the same qualities for purposes of the merger

doctrine.  This respects the parties' rights and liabilities as defined by state law as required by

*Butner v. U.S.*, 440 U.S. 48, 54-55,  99 S.Ct. 914, 59 L.Ed.2d 136 (1979) ("Congress has

generally left the determination of property rights in the assets of a bankrupt's estate to state

law.").  This court is not reviewing the state court's 2015 judgment in violation of the Rooker-

Feldman doctrine which precludes lower federal court jurisdiction over claims seeking review of state court judgments. "[T]he Supreme Court of the United States is the only federal court that could have jurisdiction to reverse a state court judgment." *In re Debbie Pines Mansfield*, 2018 WL 2972355, * 2, *aff'd*, 1:18-cv-04396 (N.D. Ill. March 29, 2019) (citing *Rooker v. Fidelity Trust Co*., 263 U.S. 413 (1923); *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983)). This court is applying the merger doctrine to that judgment after weighing the relevant factors.

Several cases hold that debtors may not challenge state court judgments that set the validity and amount of their debts. However, none does so in the context of a plaintiff who has strategically changed sides and formed separate entities to disadvantage a debtor. Lawrence Wojciak has orchestrated the situation; he had two options on the table to resolve the debt in issue and opted to pursue the option that maximized his recovery artificially, selling the loan documents and having the purchaser seek the entire debt or entering a release reserving to himself a right of equitable contribution in a proportionate share.

If Lawrence Wojciak had followed through with the settlement agreement where he could have settled the matter in his individual capacity, he would have a right of contribution against his co-defendants, including the Debtor, as he noted in the lawsuit where he sued the Debtor and others for contribution.

The entry of one co-obligor into an unconditional release will release all co-obligors except when a contrary intent appears from the face of the release document. *Private Bank and Trust Co., v. EMS Investors, LLC,* 2015 IL App. (1st) 141689, 33 N.E.3d 892, 897 (2015).

## F. Authority to Determine Validity of Claims

*In Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 Led. 281 (1939) a bankruptcy judge

disallowed a dominant stockholder's salary claim where he, Litton, obtained a judgment under

suspicious circumstances. While another person's suit for royalties was pending Litton had his

employee get a judgment by confession against the Dixie Splint Coal Company. While the

judgment in the royalties case was suspended, Litton caused an execution to issue on the

confessed judgment and levy to be made on it. Litton did this to have a shield against the

royalties debt. There was suspicion that even the sheriff was cooperating with Litton. The

Supreme Court said that "[t]he next step in the 'planned and fraudulent scheme' was the

formation by Litton of 'another of his one-man corporations', Dixie Beaver Coal Company, to

which Litton transferred the property he had acquired at the execution sale." *Id.* at 241. The next

step in Litton's scheme was to secure a resolution authorizing the filing of a petition in

bankruptcy for the sole purpose of avoiding payment on the royalties debt. Litton next purchased

and withdrew certain wage claims to appear as the only general creditor for his advantage.

The bankruptcy court found that a state court judgment that the trustee was estopped to

attack the Litton judgment did not prevent the bankruptcy court from considering its validity.

That court found (1) that Litton and Dixie Splint had made a deliberate and carefully planned

attempt to avoid the payment of the debt; (2) that Litton and Dixie Splint were "in reality the

same"; and (3) that Litton's alleged salary claims did not represent honest debt, being mere

bookkeeping entries to lessen taxes and to enable Litton to appear to be a creditor.

On appeal the Circuit Court of Appeals reversed the judgment holding that the state court

decision was res judicata in the bankruptcy case, in part, because on the pleadings in the state

court, the validity of the underlying claim was not in issue.

The Supreme Court said that Litton's submission of his judgment to the bankruptcy court for allowance plainly left the bankruptcy court with full authority to determine the validity of Litton's alleged secured claim. *Id.* at 303.

In *Margolis v. Nazareth Fair Gounds*, 249 F.2d 221, 223 (2nd Cir.1998) the Second Circuit noted that bankruptcy courts may look behind judgments for purpose of disallowing claims. Lawrence E. Wojciak has used the LLCs herein to mask his identity in seeking more than what he is entitled to. Recall that he has not filed a claim in this case. He does not want what he is entitled to; he wants to obtain more by masking his identity.

### G. Continuing Discovery Failures

The District Court remanded this matter to this court in 2017 after the claim was disallowed because the claimant failed to comply with its discovery responsibilities. The claimant has again failed to disclose pertinent information. It was established at the October 31, 2019 contested hearing that the claimant had Lawrence Wojciak testify about several documents that should have been tendered to the Debtor's attorney. Trial Transcript, pp. 84-88. The documents were withdrawn, however, this continuing refusal to tender relevant documents is an alternative ground which justifies disallowing the proof of claim in issue.

### V. Conclusion

The Debtor has met his burden to present sufficiently probative evidence that claim number 5 is not valid. The burden shifted to Generation Capital I to show that its claim is valid. Lawrence E. Wojciak is the real party in interest who is seeking to recover something that he is not entitled to. He has used the LLCs as a mask to appear to be a new party who is entitled to

-22-

full repayment of the Barrington debt. He has not even given the Debtor credit for the $240,000

he arranged to be paid to Barrington.

A separate order will be entered disallowing Proof of Claim number 5.

Date: **December 3, 2019**

**ENTERED:**

_Jacqueline Cox_
_____

**Jacqueline P. Cox**
**United States Bankruptcy Judge**